ace

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-40068-JAR |
| | ) | |
| F. JEFFREY MILLER, | ) | |
| TODD EARNSHAW, | ) | |
| BRIAN ROUSE, | ) | |
| PAUL E. NICOLACE, | ) | |
| ANGELA PARENZA, | ) | |
| ELIZABETH L. HESSEL, | ) | |
| JAMES MOSER, | ) | |
| STEVE MIDDLETON, and | ) | |
| LANNY ROSS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM ORDER AND OPINION GRANTING MOTION TO DETERMINE CONFLICT OF INTEREST OF JAMES WYRSCH

This matter comes before the Court on the government's motion to determine conflict of interest of James Wyrsch (Doc. 52). Because the government in essence asks the Court to disqualify Mr. Wyrsch from this case, the Court will treat the government's motion as a motion for disqualification. The Court held a hearing on the government's motion on August 9, 2006. After reviewing the parties' filings and the evidence adduced at the hearing, the Court is now prepared to rule. For the reasons stated below, Mr. Wyrsch is disqualified as counsel in this case.

## I.      Factual Background

Defendant F. Jeffrey Miller is the owner of various homebuilding companies in the Kansas City area. Defendant Angela Parenza was an employee of Mr. Miller's companies,

where she worked as an office manager.  On May 17, 2006, Mr. Miller and Ms. Parenza were charged, along with seven co-defendants, in a sixty-count Indictment with conspiracy, bank fraud, and engaging in monetary transactions in property derived from the unlawful activity of bank fraud.  On June 26, 2006, James R. Wyrsch entered his appearance in this case on behalf of Mr. Miller.  The following day, Jonathan L. Laurans entered his appearance on behalf of Ms. Parenza.  Subsequently, the government filed this motion seeking Mr. Wyrsch's disqualification on conflict of interest grounds.

In December 2002, Mr. Wyrsch represented Ms. Parenza, when she was initially contacted by government agents for an interview relating to the allegations in this case.  Mr. Wyrsch and another attorney in his firm, Rebecca Hain, met with Ms. Parenza on several occasions, and they discussed Ms. Parenza's knowledge of her employer's business practices.  During Ms. Parenza's representation, Mr. Wyrsch and Ms. Hain also met with Pete Smith and Kristie Orme, lawyers from the law firm of McDowell, Rice & Smith.  Mr. Smith represents Mr. Miller and his businesses in civil matters.  Mr. Wyrsch maintains that during the time that his firm represented Ms. Parenza, there was an oral agreement between Mr. Smith's firm and Mr. Wyrsch's firm that any confidential information exchanged during the course of representing Ms. Parenza would be privileged.  The duration of this oral agreement lasted a little over two weeks.

Mr. Wyrsch or Ms. Hain, shortly after being engaged by Ms. Parenza, notified FBI Agent Bob Schaefer that they were going to represent Ms. Parenza in the requested interview with the FBI.  Agent Schaefer told Mr. Wyrsch or Ms. Hain that Ms. Parenza was not a target or subject of the investigation.  Thereafter, Mr. Wyrsch decided to represent Mr. Miller.  At that time, Mr.

Wyrsch advised Ms. Parenza of the potential conflict issues and explained that she would have to

consent to Mr. Wyrsch's representation of Mr. Miller.  Ms. Parenza consented to the

representation, and she signed a waiver to that effect dated January 8, 2003.  Then Mr. Wyrsch

turned over representation of Ms. Parenza to defense attorney Jerry Handley.  There is evidence

that Mr. Miller or his company paid in full, or in part, for Mr. Handley's representation of Ms.

Parenza.[1]

      At the present time, Ms. Parenza continues to have no objection to Mr. Wyrsch's

representation of Mr. Miller.  At the August 9 hearing, Mr. Laurans, counsel for Ms. Parenza,

represented that Ms. Parenza has discussed the matter with her new counsel, and she consents to

Mr. Wyrsch's representation of Mr. Miller.  However, Ms. Parenza has qualified her waiver with

respect to Mr. Smith and the McDowell, Rice & Smith law firm.  While neither Mr. Smith nor

his firm has entered an appearance in this case, Mr. Wyrsch has stated that his firm has a "joint

client attorney-client privilege" with Mr. Smith's firm regarding Mr. Miller.  Mr. Smith and his

firm continue to represent Mr. Miller in civil matters.  At this time, Mr. Wyrsch contends that

none of the information exchanged between his firm and Mr. Smith's firm pertains to Ms.

Parenza.

      Mr. Laurans contends that Ms. Parenza was a client of the McDowell, Rice & Smith firm.

In 1999, Ms. Parenza was part of a group of employees who, according to Mr. Laurans, had their

own agenda and own questions regarding their practices in Mr. Miller's business operations.

Ms. Parenza met with lawyers at McDowell, Rice & Smith regarding these questions.  While Ms.

Parenza believes she was at one time a client of McDowell, Rice & Smith, the law firm contends

---

[1]As previously stated, Ms. Parenza is now represented by different counsel, Jonathan Laurans.

3

that she was never a client.  McDowell, Rice & Smith asserts that it represents Mr. Miller's companies, and thus any conversations that the law firm had with Ms. Parenza occurred in her capacity as an employee of the organization, and not in her individual capacity.

The government believes it is likely that Ms. Parenza will cooperate in the prosecution of her co-defendants in this case, including Mr. Miller.  Mr. Laurans expressed concern at the hearing that if Ms. Parenza testifies in this matter, she may be cross-examined with information or statements she disclosed to the McDowell, Rice & Smith firm during their meeting in 1999.  Mr. Laurans repeatedly emphasized that Ms. Parenza's waiver is conditional upon Mr. Smith's and his firm's noninvolvement in this case.

Along with consenting to Mr. Wyrsch's representation of Mr. Miller, Ms. Parenza has waived the attorney-client privilege with respect to her representation by Mr. Wyrsch.  Mr. Wyrsch has turned over his file on Ms. Parenza's representation to her attorney, Mr. Laurans.  All of the information pertaining to Ms. Parenza's representation has been disclosed with the exception of a few lines from a memorandum concerning a meeting with Mr. Smith in which he stated some legal conclusions.[2]  Mr. Laurans disclosed this file to the government, and the government has submitted the file to the Court for *in camera* review.  The Court has throughly reviewed Mr. Wyrsch's file regarding Ms. Parenza's representation.

## II.    Applicable Legal Standard

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal prosecution the right to counsel.  This right "commands, not that a trial be fair, but that a particular guarantee of fairness be provided-to wit, that the accused be defended by the counsel

---

[2]The Court has been provided *in camera* an unredacted copy of this memorandum.

he believes to be best."[3]  Additionally, this "right to effective assistance of counsel contemplates the right to conflict-free representation."[4]  "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."[5]  There is a "presumption in favor of petitioner's counsel of choice," but that presumption "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict."[6]

> The Supreme Court has recognized that a district court
>
> must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly.  The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.[7]

Thus, the Supreme Court has given district courts "substantial latitude in refusing waivers of conflicts of interest" in favor of disqualification in cases where a potential conflict may exist.[8]

The standards for conduct of attorneys in this Court are the Kansas Rules of Professional

---

[3] *United States v. Gonzalez-Lopez*, __ U.S. __, 126 S. Ct. 2557, 2562 (2006).

[4] *Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003) (citing *Holloway v. Arkansas*, 435 U.S. 475, 483–84 (1978)).

[5] *United States v. Wheat*, 486 U.S. 153, 159 (1988).

[6] *Id.* at 164.

[7] *Id.* at 162–63.

[8] *Id.* at 163.

Conduct as adopted by the Supreme Court of Kansas.[9]  Kansas Rule of Professional Conduct

("KRPC") 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter
> represent another person in the same or a substantially related matter in which that
> person's interests are materially adverse to the interests of the former client unless
> the former client consents after consultation.

Three requirements are necessary before an attorney may be disqualified: (1) the attorney whose

disqualification is sought represented a former client in a matter; (2) the matter is substantially

related to the matter in which the attorney now seeks to represent a new client; and (3) the new

client's interest is substantially adverse to the interest of the former client.[10]  The burden of proof

rests with the party alleging conflict and moving for disqualification.[11]

Once the court determines that the requirements necessary for attorney disqualification

are met, an irrebuttable presumption arises that the attorney acquired confidential information in

the former representation and is disqualified from representing the latter client.[12] The court need

not inquire into whether the confidential information was actually revealed or whether the

attorney would be likely to use the information to the disadvantage of the former client.[13]  To

conduct such an inquiry would frustrate the former client's interest in the confidential

information.[14]

---

[9]D. Kan. Rule 83.6.1.

[10]*Chrispens v. Coastal Refining & Marketing, Inc.*, 897 P.2d 104, 113–14 (Kan. 1995).

[11]*Id.* at 114 (citing *LeaseAmerica Corp. v. Stewart*, 876 P.2d 184 (Kan. Ct. App. 1994)).

[12]*Id.*

[13]*Id.* (citing *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1536 (D. Kan. 1992)) (further citation omitted).

[14]*Id.* (citing *Koch*, 798 F. Supp. at 1536) (further citation omitted).

6

### III.   Analysis

The government contends that there is a potential conflict in this case because Mr. Wyrsch must represent Mr. Miller free of compromising loyalties, but at the same time preserve the confidences that Ms. Parenza may have communicated to him in the same or substantially related matter.  The government believes that privileged information might be relevant to the cross-examination of Ms. Parenza, subjecting Mr. Wyrsch to conflicting loyalties in two potential ways: (1) Mr. Wyrsch may be tempted to use confidential information obtained from Ms. Parenza to impeach her, or (2) Mr. Wyrsch may fail to conduct a rigorous cross-examination for fear of misusing the confidential information.[15]

Mr. Wyrsch responds that there is no concern regarding confidential information from Ms. Parenza since she has waived the attorney-client privilege with respect to her representation by Mr. Wyrsch.  Ms. Parenza has consented to the disclosure of her file, and thus there is no confidential information that needs to be preserved.  The Court analyzes these arguments under the requirements of KRPC 1.9(a).  There is no dispute that the first requirement for disqualification under KRPC 1.9(a) is met because Mr. Wyrsch admits that Ms. Parenza was a former client.   Thus, the Court needs to determine whether the matters are substantially related and whether Mr. Miller's interest is substantially adverse to Ms. Parenza's interest.

### A.   Substantially Related Matter

The primary inquiry under KRPC 1.9(a) is whether the cases where the conflict has been

---

[15]In *United States v. Culp*, the court discussed such a situation as follows: "[t]he ethical canons thus present the lawyer with a Hobson's choice: the lawyer must either seek to elicit confidential information from the former client or refrain from vigorous cross-examination."  *United States v. Culp*, 934 F. Supp. 394, 398 (M.D. Fla. 1996).

alleged are substantially related.[16] The Kansas Supreme Court has refused to adopt a definition

of "substantially related" and instead urges courts to consider motions to disqualify on a case-by-

case basis.[17]  The court thus evaluates the similarities between the factual bases of the two

representations to determine whether a substantial relationship exists.[18]  Doubts as to whether a

substantial relationship exists should be resolved in favor of disqualification.[19]

Even when a substantial relationship between the matters has been found to exist, the

scope and the degree of representation by the attorney against whom the conflict is alleged must

be considered.[20]  This is so because there is reason to differentiate purposes between lawyers

who become heavily involved in the facts of a particular matter and those who enter briefly on

the periphery.[21]  Thus, "for the automatic disqualification to take place under [Rule] 1.9(a), there

must be a showing that the attorney whose disqualification is sought actually represented the

former client, not just that his or her law firm did so."[22]

In this case, the Court finds that Mr. Wyrsch's representation of Ms. Parenza is

---

[16]*Chrispens*, 897 P.2d at 114.

[17]*Barragree v. Tri-County Elec. Co-op., Inc.*, 950 P.2d 1351, 1361 (Kan. 1997) (noting that the Kansas Supreme Court discussed various versions of the substantial relationship test applied under Rule 1.9(a) in *Chrispens*, but declined to adopt any particular test); *see also* KRPC 1.9 cmt. ("The scope of the 'matter' for purposes of Rule 1.9(a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree.").

[18]*Briggs v. Aldi, Inc.*, 218 F. Supp. 2d 1260, 1267 (D. Kan. 2002) (further citation omitted); *Chrispens*, 897 P.2d at 112 ("Each case under . . . [Rule] 1.9(a) . . . must be decided on its unique facts and application of the rule to those facts.").

[19]*Koch*, 798 F. Supp. at 1537 (further citation omitted).

[20]*Chrispens*, 897 P.2d at 115.

[21]*Id.* (citing *Silver Chrysler Plymouth Inc. v. Chrysler Motors Corp.*, 518 F.2d 751, 756–57 (2d Cir. 1975)).

[22]*Id.*

substantially related to his representation of Mr. Miller.  At the hearing, Mr. Wyrsch maintained that during his representation of Ms. Parenza, he did not know what the government was investigating in regards to Mr. Miller's business.  When Mr. Wyrsch contacted the government, the United States Attorney assigned to the case at that time stated that she did not know the details of the investigation.  Mr. Wyrsch listed several assumptions that were made with regard to the investigation into Mr. Miller's business, but he contends that he did not know at that time that the investigation would culminate in the bank fraud charges alleged in the Indictment.

Even if Mr. Wyrsch did not know the precise nature of the investigation, the Court nevertheless finds that his representation of Ms. Parenza involved the same or substantially related matter.  When Mr. Wyrsch represented Ms. Parenza, he discussed with her the operations of Mr. Miller's business.  Ms. Parenza described the pricing and financing of homes built by Mr. Miller, and she explained how mortgages were set up for the home buyers.  These types of activities are substantially related to the allegations that are charged in the Indictment.  Thus, the Court finds that the matters are substantially related.

### B.      Substantially Adverse Interest

The Court also finds that Mr. Miller's interests are substantially adverse to the interests of Ms. Parenza.  Mr. Miller has been charged with conspiracy, bank fraud, and engaging in monetary transactions in property derived from the unlawful activity of bank fraud.  The government has proffered that it is likely that Ms. Parenza will cooperate in the prosecution of her co-defendants in this case, including Mr. Miller.  If Ms. Parenza testifies in this matter, any testimony implicating Mr. Miller in these allegations would be substantially adverse to the interests of Mr. Miller.  Thus, the Court finds that the interests of Mr. Miller are substantially

adverse to the interests of Mr. Wyrsch's former client, Ms. Parenza.

        **C.**    **Waiver**

Even if there is a conflict, Mr. Miller urges the Court to accept the waivers submitted by Mr. Miller and Ms. Parenza.  KRPC 1.9(a) provides that a former client can waive a conflict by consenting to the representation of the new client after consultation.  While Ms. Parenza has provided a waiver with respect to Mr. Wyrsch's representation, her waiver is conditioned upon Mr. Smith's and the McDowell, Rice & Smith firm's noninvolvement in this case.  Therefore, under Rule 1.9(a), Ms. Parenza has not provided a waiver, she has provided a conditional waiver.

While neither Mr. Smith nor his firm has entered an appearance in this case, Mr. Wyrsch has admitted that his firm has a "joint client attorney-client privilege" with Mr. Smith's firm regarding the representation of Mr. Miller.  Additionally, the Court learned at the hearing that Mr. Smith has had tangential involvement in this case.  Mr. Smith negotiated the terms of a monitoring agreement between Mr. Miller and the government that will allow Mr. Miller to continue his business operations while these criminal charges are pending.  Ms. Parenza objects to Mr. Smith's involvement and refuses to consent to Mr. Smith's representation of Mr. Miller in this case.  At the hearing, Mr. Laurans expressed concern that Mr. Smith is "lurking behind the scenes."  The Court agrees that Mr. Smith is behind the scenes in this action, as indicated by the "joint client attorney-client privilege."  Thus, the Court refuses to accept Ms. Parenza's waiver because it is conditioned on a premise that the Court cannot control.

Mr. Miller contends that Ms. Parenza has no standing to object to Mr. Smith's involvement because Ms. Parenza was never a client of Mr. Smith or the McDowell, Rice & Smith firm.  Through Mr. Wyrsch's statements at the hearing, the McDowell, Rice & Smith firm

contends that it represents Mr. Miller's business, and thus, the client is the organization.  It is the position of the McDowell, Rice & Smith firm that any meetings with Ms. Parenza were in her capacity as an employee of the organization and not in her individual capacity.  However, the meetings between Mr. Smith and Ms. Parenza were never memorialized.  While the Court has had an opportunity to review the *in camera* submissions made by Mr. Wyrsch, which memorialize his communications with Ms. Parenza while he represented her, the Court has not been able to view anything related to Mr. Smith's interactions with Ms. Parenza because none of their meetings have been memorialized and presented to the Court.  Further, at the hearing, Ms. Laurans represented that he has contacted Mr. Smith requesting all files and documents relating to discussions that Mr. Smith and his firm had with Ms. Parenza.  Mr. Laurans was told by the McDowell, Rice & Smith firm that it does not have any documents pertaining to Ms. Parenza as she was never a client of the firm.

The Tenth Circuit has adopted a five-part test "to determine whether an officer may assert a personal privilege with respect to conversations with corporate counsel despite the fact that the privilege generally belongs to the corporation."[23]

> First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And, fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.[24]

---

[23]*In re Grand Jury Supoenas*, 144 F.3d 653, 659 (10th Cir. 1998) (citations omitted).

[24]*Id.*

Because the Court has only been presented with limited facts surrounding Ms. Parenza's meeting with Mr. Smith and the McDowell, Rice & Smith firm in 1999, the Court does not know whether Ms. Parenza has asserted a personal privilege with respect to the conversations she had with Mr. Smith.  Additionally, since none of the communications between Ms. Parenza and Mr. Smith have been memorialized, the Court is not able to review any communication to determine if there is a privilege.  However, Mr. Laurans made an initial proffer at the hearing regarding the relationship between Ms. Parenza and the McDowell, Rice & Smith firm.[25]  In her eyes, Ms. Parenza believes she was a client of that firm, and she would like to assert privilege.  Using the facts that Mr. Laurans presented, Ms. Parenza may be able to show that this five-part test was met.

First, Ms. Parenza must show that she went to the McDowell, Rice & Smith firm for the purpose of seeking legal advice.  Mr. Laurans represented to the Court that when Ms. Parenza went to the law firm in 1999, it was for the purpose of seeking legal advice.  Second, Ms. Parenza must show that she made it clear that she was seeking advice in her individual capacity. Mr. Laurans stated that she went with a group that had its own agenda and questions.  While it is unknown whether Ms. Parenza made it clear that she was seeking advice in her individual capacity, Ms. Parenza did not receive warnings from the McDowell, Rice & Smith firm that the corporation was the client.  Third, the law firm must have communicated with Ms. Parenza, knowing the possible conflict.  Mr. Laurans stated that Ms. Parenza received advice at this meeting in 1999.  Fourth, Ms. Parenza must show that any advice that she received from the law firm was confidential.  While this fact is unknown to the Court at this time, if Ms. Parenza

---

[25]Notwithstanding the 1999 meeting, the Court also notes that Ms. Parenza was represented in a personal capacity by the McDowell, Rice & Smith firm on an insurance matter.

received advice with other corporate officers present, she cannot show that the conversations

with counsel were confidential.  And, fifth, Ms. Parenza must show that the substance of their

conversation did not concern matters within the company.  The fifth prong of this test "only

precludes an officer from asserting an individual attorney-client privilege when the

communication concerns the corporation's rights and responsibilities," but an officer can assert

individual privilege "if the communication between a corporate officer and corporate counsel

specifically focuses upon the *individual officer's* personal rights and liabilities."[26]  It is unknown

at this time whether Ms. Parenza went to Mr. Smith and his firm for the purpose of determining

her individual liability for conduct related to the corporate affairs of Mr. Miller's business

because the communications that occurred during this meeting were not memorialized.  Mr.

Lauran's proffer, however, suggests that Ms. Parenza did seek Mr. Smith's advice about her

individual liability, as, in his words, she went to the meeting with her *own* agenda, because she

was concerned about some of the business practices of Miller's company.

    The Court has not been presented with enough facts to determine whether Ms. Parenza

can assert a privilege against Mr. Smith and his firm.  The Court cannot determine whether there

is a privilege when it cannot review the communications between Ms. Parenza and Mr. Smith

because their communications were neither memorialized nor presented to the Court.  Ms.

Parenza's initial proffer shows that she has met some of the elements of this five-part test to

assert a personal privilege.

    Without full disclosure of all the facts surrounding Ms. Parenza's meeting with Mr.

Smith and his firm in 1999, the Court is not comfortable accepting Ms. Parenza's qualified

---

[26]*In re Grand Jury Proceedings*, 156 F.3d 1038, 1041 (10th Cir. 1998).

waiver of Mr. Wyrsch's representation when Mr. Wyrsch and Mr. Smith have a "joint client attorney-client privilege," for the Court envisions a potential conflict on the horizon.  As long as Mr. Wyrsch and Mr. Smith have this agreement, and Ms. Parenza refuses to consent to Mr. Smith's involvement in this case, the Court cannot accept Ms. Parenza's qualified waiver of Mr. Wyrsch's representation.  Additionally, there is the potential for Mr. Smith to be called as a witness in this case if defendants choose to use the advice of counsel as a defense.  While Mr. Wyrsch contends that it is not his intention to call Mr. Smith at this time, the Court notes that this conflict issue arises during the "murkier pre-trial context when relationships between parties are seen through a glass, darkly."[27]  While it is not Mr. Wyrsch's intention to call Mr. Smith at this time, the Court recognizes that there is the potential for this scenario, and the Court chooses to avoid this potential conflict.

Therefore, the Court, exercising "substantial latitude," refuses to accept Ms. Parenza's conditional waiver.  Because the Court finds that Mr. Wyrsch's involvement in this case creates a conflict of interest that has not been unconditionally waived, the Court grants the government's motion and disqualifies Mr. Wyrsch from this action.

Mr. Miller argues that there are other remedies short of disqualification that will cure the conflict.  Mr. Wyrsch suggested at the hearing that Mr. Miller could have separate counsel cross-examine Ms. Parenza.[28]  However, this solution fails to remedy the situation surrounding the "joint client attorney-client privilege" that Mr. Wyrsch has with Mr. Smith and the McDowell,

---

[27]*Id.* at 162–63.

[28]*See Swanson v. Wabash, Inc.*, 585 F. Supp. 1094 (N.D. Ill. 1984) (finding that defendants' attorneys' previous representation of a non-party witness for plaintiff did not warrant disqualification; instead the court required the attorneys to sign affidavits stating that they did not reveal any of the witness' confidences and ordered that a separate attorney cross-examine the witness).

Rice & Smith firm.  As long as Ms. Parenza objects to Mr. Smith's involvement in this case, the Court will not accept Ms. Parenza's waiver with respect to Mr. Wyrsch when there is a "joint client attorney-client privilege" between Mr. Wyrsch and Mr. Smith.

Mr. Miller also argues that Mr. Wyrsch's disqualification is extremely prejudicial because Mr. Wyrsch has represented Mr. Miller for over three years and is fully familiar with the facts and circumstances of this case.  Further, he maintains that it would be costly to employ new counsel for duplicative legal work at this point.  While the Court recognizes that disqualification may pose hardships for Mr. Miller, such circumstances do not outweigh the Court's concern about the potential conflicts in this case.  The Court notes that this case has been designated a complex case under 18 U.S.C. § 3161(h)(8)(B)(ii).  (Doc. 60.)  This designation has suspended the Speedy Trial time limits so that the government and the defendants may adequately prepare for the pretrial proceedings and trial.  While this is a complex case, the Court is confident that with the suspended time limits, Mr. Miller can employ conflict-free counsel who will get up to speed with the facts and circumstances of these charges and effectively represent him throughout this case.

**IT IS THEREFORE ORDERED BY THE COURT** that the government's motion to determine conflict of interest of James Wyrsch (Doc. 52) is **GRANTED.**

**IT IS FURTHER ORDERED** that Mr. Wyrsch is disqualified from representing F. Jeffrey Miller on conflict of interest grounds pursuant to Kansas Rule of Professional Conduct 1.9(a).

**IT IS SO ORDERED**.

Dated this 17th   day of August 2006.

15

 S/ Julie A Robinson
Julie A. Robinson
United States District Judge