JAR/kaw

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,      )
                                          )

          **Plaintiff,**        )
                                          )

       vs.                     )
                                          )

**F. JEFFREY MILLER, TODD EARNSHAW,**   )
**BRIAN ROUSE and JAMES MOSER, et. al,**   )    **Case No. 06-40068-JAR**
                                          )

         **Defendants.**     )
_____)

## MEMORANDUM AND ORDER

Defendants have filed a myriad of motions in this case, some of which the Court ruled upon at the motions hearing on February 25, 2008,[1] one of which the Court deferred ruling upon;[2] and some of which the Court took under advisement and now rules upon in this memorandum and order.  In this memorandum and order, the Court rules upon Defendant Miller's motions: to dismiss (Doc. 244), to strike (Doc. 245); to exclude certain evidence (Docs. 246, 247, 250); for release of Brady materials (Doc. 248); to determine admissibility of co-conspirator statements (Doc. 249); and for leave to file additional motions (Doc. 252).  The Court also rules upon Defendant Earnshaw's motions: to exclude certain evidence (Doc. 229);

---

[1]As to these defendants, the Court ruled upon the following motions during the motions hearing on February 25, 2008, granting: Miller's motion to join in motions of Earnshaw, Rouse and Moser (Doc. 251 ); Earnshaw's motion to join in motions of Miller, Rouse, Moser and Ross (Doc. 233); Rouse's motion to join in motions of Miller, Earnshaw, Moser and Ross (Doc. 253); and Moser's motion to join motions of all co-defendants (Doc. 260).  The Court denied Moser's motion to produce field notes (Doc. 264).  At the hearing, Moser withdrew his motion for suppression of statements (267).

[2]At the motions hearing, the Court deferred ruling upon Earnshaw's motion for disclosure of Fed. R. Evid. 404(b) evidence (Doc. 241) until such time as the Court enters a scheduling order establishing deadlines for certain pretrial disclosures or notices. The Court's original scheduling order (Doc. 57) set such a deadline; and the Court will enter an amended scheduling order establishing a new deadline.

for bill of particulars (Doc. 231); for disclosure and information concerning cooperating individuals (Doc. 235);[3] for adequate court facilities (Doc. 237); for *James* hearing to determine admissibility of co-conspirator statements (Doc. 239); and for extension of time to file additional motions (Doc. 243). The Court also now rules upon Defendant Rouse's motions: to determine admissibility of co-conspirator statements (Doc. 228); for disclosure of *Brady/Giglio* information (Doc. 254); and for bill of particulars (Doc. 255). The Court also rules upon Defendant Moser's motions: to sever defendant Moser from his co-defendants (Doc. 258); for an extension of time to file additional motions (Doc. 259); for discovery and inspection of list of witnesses (Doc. 261); for pretrial inspection of demonstrative evidence (Doc. 263); for notice of non-testifying co-conspirator statements (Doc. 265); for Notice pursuant to Rule 807 (Doc. 266); and for bill of particulars (Doc. 273). And, the Court rules upon Defendant Lanny Ross's Motion to Suppress (Doc. 256).[4] Finally, the Court denies the motion it previously had deferred ruling upon, Defendant Earnshaw's motion for disclosure of Rule 404(b) evidence (Doc. 241), as the Court will establish a new deadline for disclosure of Rule 404(b) evidence in an amended scheduling order.

## I.      Motions for Notice, Disclosure and Discovery, and For Leave to File Additional Motions

The defendants seek disclosure of *Brady* and *Giglio* information, an abbreviated list of the witnesses that the government actually intends to call, information about cooperating

---

[3]At the motions hearing on February 25, 2008, the Court found moot that part of the motion that asked for disclosure and discovery of confidential informants, upon the government's representation that there were no confidential informants.

[4]Although Defendant Ross pled guilty on June 2, 2008 (Docs. 283 and 284), the Court has granted the co-defendants' various motions to join in the motions of one another. As discussed below, the co-defendants have standing to pursue Defendant Ross's motion to suppress statements.

individuals, information about expert witnesses, pretrial inspection of demonstrative evidence, and notice of any evidence the government intends to offer under the residual exception to the hearsay rule.  Defendants also move for an extension of time to file additional motions.  It should be noted that the Court entered a General Order of Discovery and Scheduling in this case on June 30, 2006.[5]  In that scheduling order, the Court ordered the parties to comply with the various criminal rules of procedure, as well as any obligations under *Brady*,[6] *Giglio*,[7] the Jencks Act,[8] and Rule 404(b) of the Federal Rules of Evidence.  There are a number of discovery and disclosure deadlines in the scheduling order; and many of those deadlines are tied to the date of trial.  Because this has been designated as a complex case, with extensive discovery, the defendants nonetheless have moved for specific disclosures and deadlines, earlier than those established in the scheduling order

- ***Brady* and *Giglio* Evidence**

Defendants Earnshaw, Miller, and Rouse seek discovery of a wide range of evidence about witnesses and co-defendants.[9]  Specifically, Earnshaw and Miller seek disclosure of: plea agreements between the government and co-defendants; proffer letters to cooperating individuals; statements or the substance of interviews of home buyers who admitted guilt; lender files; loan underwriting guidelines; calculations of borrowers' income; information regarding the grant of immunity to any witnesses; and other documents relating to the charges in this case.

---

[5](Doc. 57)

[6]*Brady v. Maryland*, 373 U.S. 83 (1963).

[7]*Giglio v. United States*, 405 U.S. 150 (1972).

[8]18 U.S.C. § 3500.

[9](Docs. 235, 248, 254)

Rouse seeks statements tending to reveal criminal activity of home buyers and cooperating co-defendants, as necessary impeachment evidence.

Under *Brady*, the prosecutor "has a duty to disclose material exculpatory evidence to the defendant."[10]  That means that the prosecutor must disclose information generally favorable to the defendant's defense or evidence that could be used to impeach government witnesses.[11]  Evidence is material in the *Brady* sense if it is relevant to the defendant's guilt or punishment.[12]  When a witness's testimony may be the determinative factor in the defendant's guilt or innocence, disclosure of impeachment evidence is required under this rule.[13]  The prosecution's failure to provide *Brady* evidence violates the defendant's due process right even if done in good faith.[14]

With these principles in mind, the Court grants in part, defendants' motions.  The government has generally acknowledged its obligations under *Brady* and *Giglio*.  The Court grants the defendants' motion for discovery of plea agreements with, and proffer letters to, cooperating co-defendants or witnesses, as well as documents or other evidence of grants of immunity to witnesses.  This type of evidence generally falls within the bounds of *Brady* and *Giglio*.  But defendants seek discovery beyond these bounds.  For example, Rouse asserts that

---

[10]*United States v. Pedraza*, 27 F.3d 1515, 1527 (10th Cir. 1994).

[11]*United States v. Geames,* 427 F.3d 1333, 1336 (10th Cir. 2005).

[12]*Id.*

[13]*Id.*

[14]*Pedraza*, 27 F.3d at 1527.

"all statements" of witnesses[15] and co-defendants are important to his defense and for the impeachment of witnesses.  But the government is not required to give the defendants open file discovery of all evidence in the government's possession.[16]  Nor is the government required to give the defendants discovery of information not in its possession, such as the presentence reports of co-defendants and witnesses, which Defendant Earnshaw requests.  Moreover, a defendants' mere speculation about the exculpatory nature or impeachment quality of evidence does not trigger an obligation to disclose under *Brady* or *Giglio*.[17]

To be sure, a statement of a witness may be material exculpatory evidence when he or she is a key witness, or when the witness's statement could impeach the credibility of the witness or other witnesses whose credibility is central to the case.[18]  Furthermore, impeachment evidence becomes vital where the government intends to rely strictly on witness testimony to show the guilt of the defendants.[19]  Here, the government has stated that it intends to offer corroborating evidence in different forms, presumably through documents and other demonstrative evidence.

Nor is there an obligation under *Brady* or *Giglio* to disclose all drafts or versions of plea agreements, proffer letters or grants of immunity.  To the extent defendants seek such, their motion is denied because they are entitled to only the final, operative plea agreement, proffer

---

[15]Of course the government has the obligation to disclose witness statements pursuant to the Jencks Act, 18 U.S.C. § 3500.

[16]*See United States v. Wright*, 43 F.3d 491, 496 (10th Cir. 1994); *United States v. Kiister*, No. 97-40036-02-SAC, 1998 WL 982887, at *4 (D. Kan. Aug. 7, 1998) (stating that the prosecutor is not required to disclose his entire file to the defendant, only evidence favorable, that if suppressed, would deny the defendant a fair trial).

[17]*Kiister*, 1998 WL 982887, at *4.

[18]*See Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002) (undisclosed confession of a witness to having committed a murder could have been used to impeach that witness and three other key witnesses with the same interests in the case.).

[19]*United States v. Payne*, 63 F.3d 1200, 1210-11 (2d Cir. 1995).

5

letter, or immunity agreement.

With respect to the other types of evidence that defendants request, whether or not such falls within the ambit of *Brady* or *Giglio*, is entirely dependent on the content of such evidence. For example, lender files, calculation of borrower's income, and loan underwriting guidelines may or may not be materially exculpatory or favorable to a defendant's defense.[20]  The government has acknowledged its obligations under *Brady* and *Giglio*, and as long as timely disclosure of such is made before trial so that defendants can make use of the evidence, the Due Process Clause is not offended.[21]  Thus, defendants' motions are granted in part and denied in part.

- **Early Disclosure of Witness List and Inspection of Demonstrative Evidence**

Defendant Moser seeks discovery of the government's witness list, and in particular, a narrowed down list of the witnesses that the government actually intends to call.[22]  The exchange of witness lists is ordered in the Court's standard scheduling order entered in this case on June 30, 2006.[23]  Moser argues that early inspection of the witness list will facilitate his defense, pointing out that there are over 80,000 pages of documents in discovery and that the government has a list of thirty to fifty witnesses it could call for certain counts in the Indictment.  Yet at the same time, the defendants have moved for additional time to file motions, because discovery has been ongoing.  For this reason alone, Moser's motion is premature and is denied.  Given the

---

[20]The exculpatory nature of other types of discovery requested would similarly depend on content or circumstance, for example: documents confirming buyer's knowledge of terms of loan and sales contract; underwriter's calculations of borrower's income; or pending felony charges against government witnesses.

[21]*United States v. Mendez*, 514 F.3d 1035, 1047 (10th Cir. 2008).

[22](Docs. 261, 263)

[23](Doc. 57)

passage of time since the Court's scheduling order, however, the Court will enter an amended scheduling order that establishes deadlines for exchange of exhibit and witness lists, among other directives and deadlines.

Moser also moves for early inspection of demonstrative evidence, fourteen days prior to trial. The disclosure of demonstrative evidence is not addressed in the Court's standard scheduling order, because typically there is no requirement for early disclosure. Demonstrative evidence is usually used to clarify certain evidence and assist counsel in his or her presentation to the jury. In the interest of expediency, however, to the extent the government *or a defendant* intends to use demonstrative evidence during their opening statement, they are directed to allow the other parties to inspect the same at least twenty-four hours before trial. During the course of the trial, and to the extent the order of proof allows,[24] all parties are directed to allow the other parties to inspect any demonstrative evidence at least twelve hours in advance. To this extent, the motion for early inspection of demonstrative evidence is granted.

- **Expert Witnesses**

Defendant Earnshaw moves for identification of all expert witnesses that the government intends to call at trial and a summary of their intended testimony under Rules 702, 703, or 705.[25] Under Fed. R. Crim. P. 16(a)(1)(G), "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." The

---

[24]The Court recognizes that the order of proof during a trial may change, sometimes suddenly, depending on the schedules of the witnesses and the flow of the evidence.

[25](Doc. 234)

Court's scheduling order[26] directs that the government must, "within a reasonable time period after arraignment, and not later than 20 days before the motions deadline . . . comply with Rule 16." The scheduling order further provides that "[p]ursuant to Rule 16(a), the government shall . . . permit the defendant to inspect and copy . . . [a] written summary of testimony the government intends to use under Rules 702, 703, or 705 . . . during its case-in-chief." The government, however, notes that no such testimony has been identified and that it will abide by the continuing obligation to provide that information once it is discovered. Accordingly, defendant's motion is denied .

- **Notice of Use of Residual Exception to Hearsay Rule**

Defendant Moser requests that the government provide reasonable notice if it intends to use any evidence pursuant to Fed. R. Evid. 807.[27] Rule 807 is the residual exception to the hearsay rule. It provides that "a statement not specifically covered by Rule 803 but having the equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule" if the Court makes certain determinations in favor of admitting the statement.[28] Moser's motion is denied, as the government stated that it is not currently aware of any such evidence.

- **Leave to File Additional Motions**

Defendants Earnshaw, Moser, and Miller move for additional time to file more motions.[29] Defendants' motions are granted in part. Defendants claim that they need more time to sift

---

[26](Doc. 57)

[27](Doc. 266)

[28]Fed. R. Evid. 807.

[29](Docs. 243, 252, 259)

through an additional twenty-five boxes of documents recently received in discovery, and to file additional motions based on the materials in this additional discovery.  Essentially, defendants seek to extend the motions deadline in this case to ninety days before trial.  The government argues that the materials in these twenty-five boxes are not new at all, and that defendants have had access to these materials since July 2006.

Whether to extend the pretrial motions deadline is within the discretion of the Court.[30]  In this case, the motions deadline was January 11, 2007.  By or before that deadline, defendants had filed over thirty motions.  The Court notes that this case is not on the trial calendar and that a counterpart to this case, Case No. 06-40151, is tentatively scheduled to proceed to trial before this case.  As such, granting an extension of the motions deadline in this case would not be prejudicial to the government, nor would it unreasonably delay the case.  Accordingly, the motion is granted in part.  Defendants have an additional 30 days from the date of this Order to file any additional motions pertaining to the referenced twenty-five boxes of documents.

## II.     Motions for Notice of Non-testifying Coconspirator Statements, and for Determination of Admissibility of Co-Conspirator Statements in a *James* Hearing.

Defendants Rouse, Earnshaw, Moser, and Miller move to exclude and/or determine the admissibility of coconspirator statements by holding a *James* hearing, and for discovery of any co-conspirator statements the government intends to use as rebuttal evidence.[31]  The motion for discovery of rebuttal evidence is denied.  Such disclosure is not required by the Federal Rules of Criminal Procedure.  Furthermore, rebuttal evidence, by definition, is not within the scope of a

---

[30]*Hillhouse v. SWO Acquisition Corp.*, 946 F.2d 901 (Table), 1991 WL 216466, at *2 (10th Cir. Oct. 23, 1991).

[31] Docs. 228, 239, 249, 265.

*James* hearing because as more fully discussed below, in a *James* hearing the Court is determining whether there was a conspiracy, whether the defendant and the declarant were members of the conspiracy and whether the statement was made in furtherance of the conspiracy.[32]

Defendants also seek disclosure of co-conspirator statements and conduct that the government intends to offer at trial, because a co-conspirator's statement, if admitted at trial, is taken as the statement of the defendant. To the extent that such disclosure has not already been accomplished, the motion is granted.

Defendants argue that a *James* hearing is required in this case because allowing the government to establish admissibility of co-conspirator statements during the course of the trial may prejudice the defendants. The government responds that it will prepare its order of proof at trial in a manner that allows the Court to quickly connect the evidence establishing the existence of the conspiracy and the other elements requisite to admission of co-conspirator statements. This will render a pretrial *James* hearing unnecessary and avoid any unnecessary prolonging of the trial.

Federal Rule of Evidence 801(d)(2)(E) provides that "'[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy."[33] Statements that are intended to

---

[32]It is axiomatic that if the government fails to prove these necessary elements for the admission of a co-conspirator statement, there will be no "rebuttal" to worry about, for failure to prove the existence of a conspiracy, or failure to prove that the defendant was a member of the proven conspiracy will result in the jury trial ending long before the need for any rebuttal evidence.

[33]*United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (quoting Fed. R. Evid. 801).

promote the conspiracy are in furtherance of the conspiracy.[34]  Thus, for example, statements by

a co-conspirator intended to explain, facilitate, provide reassurance, or serve to maintain trust

and cohesiveness promote the conspiracy and are in furtherance of the conspiracy.[35]  Before

admitting co-conspirator statements, the district court must determine by a preponderance of the

evidence that a conspiracy existed, the defendant and declarant were both members of the

conspiracy, and that the statements were made in the furtherance of the conspiracy.[36]

In the Tenth Circuit, a district court can only admit co-conspirator statements if it holds a

*James* hearing or conditions admission on forthcoming proof of a "predicate conspiracy through

trial testimony or other evidence."[37]  The preference, however, is for a *James* hearing.[38]  In

making its determination, the court may rely on the actual statements by co-conspirators along

with independent evidence of the conspiracy.[39]  The independent evidence linking the statements

to the defendant, however, need not be substantial.[40]  For example, the burden is met by

corroborating evidence by an investigator.[41]

Defendants' motions are denied without prejudice.  There has been extensive discovery

in this case.  The Court, in the instant order, has granted defendants additional time to file

---

[34]*Id.*

[35]*Id.* (citations omitted).

[36]*United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).

[37]*Townley*, 472 F.3d at 1273 (quoting *Owens*, 70 F.3d at 1123).

[38]*Id.*

[39]*United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996).

[40]*Id.* (citing *United States v. Rascon*, 8 F.3d 1527, 1541 (10th Cir. 1993)).

[41]*Id.*; *see also Owens*, 70 F.3d at 1125.

11

pretrial motions, and the Court intends to enter an amended scheduling order in the near future. The Court will schedule a limine hearing prior to trial, and if the defendants remain convinced that the government is incapable of producing evidence of the necessary elements for admissibility, the Court will entertain a renewed motion shortly before trial.

Defendant Earnshaw moves to exclude co-conspirator testimonial statements,[42] arguing that even if admissible under the co-conspirator exception to the hearsay rule,[43] admitting such statements in evidence violates the Sixth Amendment.  Under the Sixth Amendment's Confrontation Clause, a defendant has the right to confront the witnesses against him.[44]  In *United States v. Crawford*,[45] the Supreme Court held that testimonial statements of a witness are only admissible if the witness is unavailable and the defendant had an opportunity to cross-examine the witness.[46]  But the *Crawford* Court also stated that a co-conspirator's statement made during and in furtherance of the conspiracy is not a testimonial statement, and thus its admission does not violate the Sixth Amendment.[47]  Rather, a statement is testimonial if the "circumstances objectively indicate that . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."[48]

_____

[42](Doc. 229)

[43]Fed. R. Evid. 801(d)(2)(E).

[44]*United States v. Crawford*, 541 U.S. 36, 42 (2004).

[45]541 U.S. 36 (2004).

[46]*Id.* at 59.

[47]*Id.* at 56.

[48]*Davis v. Washington*, 547 U.S. 813, 822 (2006).

In *United v. Summers*,[49] the Tenth Circuit held that "'a statement is testimonial if a reasonable person in the position of the declarant would objectively foresee that his statement might be used in the investigation or prosecution of a crime.'"[50]  In contrast, Fed. R. Evid. 801(d)(2)(E) states that "'a statement is not hearsay if . . . offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.'"[51]  Statements are in furtherance of the conspiracy when they are "'intended to promote the conspiratorial objectives.'"[52]  Thus, statements made to explain the events, facilitate completion of the conspiracy, or provide reassurance and maintain trust between co-conspirators are admissible as non-hearsay.[53]  Where, however, the statements qualify as both non-hearsay under Rule 801(d)(2)(E) and are testimonial, an analysis under *Crawford* and its progeny is required.[54]  Defendant Earnshaw does not point the Court to any statements fitting this bill and accordingly, his motion is denied.  Defendant may renew his motion once any statements fitting this description becomes apparent.

## III.    Motion to Suppress Statements

Defendant Ross moves to suppress statements he made to agents who interviewed him.[55]

---

[49]414 F.3d 1287 (10th Cir. 2005).

[50]*United States v. Townley*, 472 F.3d 1267, 1272 (10th Cir. 2007) (quoting *United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005)).

[51]*Townley*, 472 F.3d at 1273 (quoting Fed. R. Evid. 801(d)(2)(E)).

[52]*Id.* (quoting *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986)).

[53]*Id.* (citing *United States v. Smith*, 833 F.2d 213, 219 (10th Cir. 1987)).

[54]*See United States v. Baines*, 486 F. Supp. 2d 1288,1300 (D.N.M. 2007) (explaining that "while a majority of co-conspirator statements are not testimonial in nature, when such a statement is testimonial it is subject to the requirements of the Confrontation Clause.").

[55](Doc. 256)

Ross claims that he was rendered incapacitated by drugs provided to him after his heart surgery. Thus, he argues, he was incapable of knowingly and intelligently consenting to the interview, and further, his statements could not be considered accurate.  Ross has since pled guilty and is no longer prosecuting this motion.  But the Court has granted the other defendants' motions to join in one another's motions.  Although Ross is no longer pursuing suppression of his statements, the other defendants have standing to pursue this relief.  The defendants have standing to challenge the voluntariness of Ross's confession, not based on a violation of Ross's constitutional rights, but on the basis of a violation of their own right to due process.[56]

The government argues that defendants have not met the burden of showing that the medications rendered Ross mentally impaired and incapable of consenting to the interview. Whether a statement is voluntary is determined by viewing the totality of the circumstances.[57] Relevant circumstances include "(1) the age, intelligence, and education of the defendant; (2) the length of detention; (3) the length and nature of the questioning; (4) whether defendant was advised of his constitutional rights; and (5) whether the defendant was subjected to physical punishment."[58]  When confronted with a claim for mental or physical impairment due to medication, the defendant must show that the medication caused his impairment.[59]  Here, Ross provided no evidence other than his conclusory allegation that he was impaired.  The motion to

---

[56]*Clanton v. Cooper,* 129 F.3d 1147, 1157-1158 (10th Cir.1997) (involuntary or coerced confessions are unreliable and offend the Constitution. Thus if the government uses the involuntary confession of another person against the defendant, the defendant has standing to challenge as a violation of the defendant's due process rights.).

[57]*United States v. Toles*, 297 F.3d 959, 965 (10th Cir. 2002).

[58]*Id*. at 966.

[59]*See United States v. Ellison*, 791 F.2d 821, 823 (10th Cir. 1986).

14

suppress is accordingly denied.[60]

## IV.    Motions for Severance and Adequate Court facilities

Defendant Moser moves for severance from his co-defendants.[61]  "There is a preference in

the federal system for joint trials of defendants who are indicted together"[62] because joint trials

"promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of

inconsistent verdicts.'"[63]  But under Fed. R. Crim. P. 14(a), if the defendants' joinder in the

indictment appears to prejudice a defendant, the court may sever the defendants' trial or provide

any other relief that justice requires.  Indeed, the Supreme Court stated that when defendants are

properly joined under Rule 8(b), "a district court should grant a severance under Rule 14 only if

there is a serious risk that a joint trial would compromise a specific trial right of one of the

defendants, or prevent the jury from making a reliable judgment about guilt or innocence."[64]  The

determination of the risk of prejudice and any remedy that may be necessary is committed to the

sound discretion of the court.[65]  "'In the context of conspiracy, severance will rarely, if ever, be

required.'"[66]  In a conspiracy case, joint trials "'reduce the chance that each defendant will try to

create a reasonable doubt by blaming an absent colleague' and provide 'the jury the best

---

[60]*See United States v. Muniz*, 1 F.3d 1018, 1022 (10th Cir. 1993) (explaining that intoxication does not automatically make a statement involuntary); *see also United States v. Short*, 947 F.2d 1445, 1450 (10th Cir. 1991) (finding defendant's statements voluntary even though he was on pain medication for broken bones).

[61](Doc. 258)

[62]*Zafiro v. United States*, 506 U.S. 534, 537 (1993).

[63]*Id.* (quoting *Richardson v. Marsh*, 481 U.S. 200, 209 (1987)).

[64]*Id.* at 539.

[65]*Id.* at 541.

[66]*United States v. Ramos*, 839 F. Supp. 781, 785 (D. Kan. 1993) (quoting *United States v. Searing*, 984 F.2d 960, 965 (8th Cir. 1993)).

15

perspective on all of the evidence and therefore increases the likelihood of a correct outcome.'"[67]

Moser offers no grounds for severance, but states "[t]o prevent premature and prejudicial disclosure of defense theories defendant requests pursuant to Rule 16(d) . . . that the court hold an *ex parte* hearing to allow defense counsel to proffer the necessity of severance in this case." Fed. R. Crim. P. 16(d)(1)[68] states that "[t]he court may permit a party to show good cause by a written statement that the court will inspect *ex parte*.  If the relief is granted, the court must preserve the entire text of the party's statement under seal."  To that end, Defendant Moser is directed to submit, *ex parte*, a written statement showing good cause why he is entitled to severance and/or why he is entitled to an *ex parte* hearing on his motion for severance. Defendant Moser is directed to make this submission within ten (10) days of this order.  *Before filing this submission electronically, defendant Moser should check with the Clerk's office for direction as to filing his submission at the CMECF ex parte level of access.*  The motion for severance thus remains under advisement.

Defendant Earnshaw moves for the court to provide "adequate court facilities." [69] Earnshaw argues that he and his counsel should have a separate table during trial because sharing a counsel table with his many co-defendants is impractical.  While the courtroom can only accommodate so many counsel tables, if all four defendants go to trial, it is likely that the Court will provide two tables for the four defendants and their counsel.  Earnshaw further argues that sharing counsel table with his co-defendants is prejudicial because, (1) the jury will likely

---

[67]*Id.* (quoting *United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987)).

[68]Fed.R.Crim.P. 16(d)(1).

[69](Doc. 237)

view the defendants as a group and the guilt of a co-defendant may spill over on him, and (2) sharing counsel table will unduly risk disclosure of confidential, privileged information.

"The criminal process presumes that the defendant is innocent until proved guilty."[70] "Accordingly, the Constitution prohibits any courtroom arrangement or procedure that 'undermines the presumption of innocence and the related fairness of the factfinding process.'"[71] The presumption of innocence is undermined when there is an unacceptable risk that impermissible factors will come into play.[72] In situations where the courtroom arrangement is challenged, the court must determine whether the arrangements create an unacceptable risk to the defendant's right to a fair trial.[73] Whether to grant a defendant's motion is within the discretion of the court.[74]

In *United States v. Ailsworth*,[75] Judge Crow explained that:

> It is axiomatic that each defendant is entitled to a fair trial. However, there is no requirement that each defendant be placed at a separate table. The arrangement of the courtroom, including the seating arrangement for the defendants is committed to the sound discretion of the district court. The arrangement of the courtroom, including the placement of the defendants, their counsel and the security personnel, is subject to challenge only if the arrangement is inherently prejudicial. A courtroom practice or arrangement is inherently prejudicial if "an unacceptable risk is presented of impermissible factors coming into play." In short, based upon past

---

[70]*United States v. Larson*, 460 F.3d 1200, 1214 (9th Cir. 2006) (citing *Deck v. Missouri*, 544 U.S. 622, 630 (2005)).

[71]*Id.* (quoting *Deck*, 544 U.S. at 630).

[72]*Id.* (citing *Estelle v. Williams*, 425 U.S. 501, 503 (1976)).

[73]*Id.*; *see also Tyler v. Nelson*, 163 F.3d 1222, 1229 (10th Cir. 1999).

[74]*Tyler*, 163 F.3d at 1229.

[75]No. 94-40017-01-07-SAC, 1994 WL 539347, at * 27 (D. Kan. Aug. 24, 1994).

> experience in multi-defendant trials, the court does not believe that the arrangement of the defendants around a single table in the courtroom will be prejudicial to any of the defendants.[76]

In this situation, like in *Ailsworth*, the Court is not convinced that there will be any unacceptable risks of impermissible factors coming into play if defendants are placed at the same counsel table or tables throughout trial.  Moreover, the jury is instructed, as a matter of law, that it is their duty to give separate consideration to the evidence as it pertains to each defendant.   Accordingly, defendant's motion is denied.

**V.**      **Motions for Bill of Particulars, Motion to Strike and Motion to Dismiss**

Defendants Earnshaw, Moser, and Rouse have filed motions for bill of particulars,[77] generally arguing that the Indictment does not provide sufficient information to give them the requisite notice of the charges they face.  Defendant Miller moves to dismiss, or in the alternative for a bill of particulars, based on the insufficiency of the Indictment.[78]  Defendant Miller further moves to strike[79] certain language from the Indictment as prejudicial surplusage.

•      **Motions for Bill of Particulars**

One or more of the defendants claim that the Indictment[80] is insufficient in giving them notice of: (1) the place where the conspiracy was formed; (2) the persons present when the conspiracy was formed; (3) the identity of all participants in the conspiracy; (4) the persons who

---

[76]*Id.* (citations omitted).

[77](Docs. 231, 255, 273)

[78](Doc. 244)

[79](Doc. 245)

[80]"Indictment" refers to the First Superseding Indictment (Doc. 188) filed on August 8, 2007.

18

participated in all meetings in furtherance of the conspiracy; (5) the specific terms of the conspiratorial agreement; (6) the specifics, including the location of all meetings and conversations in which any defendant participated, including the names of all persons that the government claims were coconspirators; (7) the co-conspirator who performed each specific act alleged in the Indictment; (8) the date on which each defendant joined the conspiracy; (9) the nature and extent of each defendant's involvement in the conspiracy and substantive crimes with which each defendant is charged; (10) the evidence linking the defendants to the counts for which they are charged; (11) the alleged illegal act or acts that underlie each count of the Indictment; and (12) the documents that underlie each count of the Indictment.

An indictment is only held to a minimal constitutional standard; the defendant only need be placed on notice of the charges against him.[81]  An indictment is sufficient if it contains the elements of the crime charged, sufficiently apprises the defendant of what he must defend, and enables the defendant to assert double jeopardy.[82]  A review of the sufficiency of an indictment is done by reading the indictment as a whole, making sure to interpret it in a common sense fashion.[83]

"'The purpose of a bill of particulars is to inform the defendant of the charges against him with sufficient precision to allow him to prepare his defense.'"[84]  "A bill of particulars is not necessary if 'the indictment sets forth the elements of the offense charged and sufficiently

---

[81]*United States v. Daniels*, 159 F. Supp. 2d 1285, 1290 (D. Kan. 2001).

[82]*United States v. Chisum*, 502 F.3d 1237, 1244 (10th Cir. 2007) (citing *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)).

[83]*Daniels*, 159 F. Supp. 2d at 1290.

[84]*United States v. Tyler*, 42 F. App'x 186, 190 (10th Cir. 2002) (quoting *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996)).

apprised the defendant of the charges'" against him.[85]  A bill of particulars is not a discovery device to obtain the government's evidence; instead, it is a device used to obtain the theory of the government's case where the indictment is too vague.[86]  Furthermore, where the government has provided discovery in abundance, defendants cannot assert that a bill of particulars is necessary because review of the documents would be copious or burdensome to conduct.[87]  Whether to grant a bill of particulars is in the sound discretion of the trial court,[88] and will not be granted unless the defendant can show prejudice.[89]

In this case, the government has provided voluminous discovery to the defendants. Moreover, the Indictment includes a detailed statement concerning the background of the business entities and individuals involved in the offenses charged, as well as a detailed account of many alleged acts done in furtherance of the conspiracy.  Further, in the substantive counts of the Indictment, there is sufficient notice of the transaction that underlies the count, for not only is the victim financial institution identified, the date of the transaction is identified, the name of the borrower is identified, and the amount of the loan is identified.  Moreover, the government has provided discovery that includes a separate loan file for each borrower's transaction; each file includes all relevant documents pertaining to the transaction.  Thus, the defendants' argument that they are unable to determine which documents underlie which count of the Indictment, is

---

[85]*United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992) (quoting *United States v. Dunn*, 841 F.2d 1026, 1030 (10th Cir. 1988)).

[86]*Tyler*, 42 F. App'x at 190.

[87]*See Ivy*, 83 F.3d at 1282.

[88]*Dunn*, 841 F.2d at 1029.

[89]*United States v. Wright*, 826 F.2d 938, 942 (10th Cir. 1987).

without merit.

Furthermore, some of the detail that defendants complain is lacking, is not required to be in an indictment; nor is a bill of particulars meant to be a discovery device for this information. Specifically, neither the Indictment nor the bill of particulars need identify: (1) the place where the conspiracy was formed; (2) the persons present when the conspiracy was formed; (3) the identity of all participants in the conspiracy; (4) the persons who participated in all meetings in furtherance of the conspiracy; (5) the specific terms of the conspiratorial agreement; (6) the specifics, including the location of all meetings and conversations in which any defendant participated, including the names of all persons that the government claims were coconspirators; (7) the co-conspirator who performed each specific act alleged in the Indictment; or (8) the date on which each defendant joined the conspiracy.   This is essentially a request for the "whens, wheres and with whoms of acts and participation in the charged conspiracy," which is not the proper function of a bill of particulars.[90]  Nor is the government required to provide each and every overt act where the same scheme was repeated numerous times to defraud home buyers.[91]

The defendants also complain, however, that the Indictment fails to give them sufficient notice of what they individually did to commit conspiracy and the substantive offenses with which they were charged.  But as discussed below, the content of the Indictment belies this claim.

• **The Indictment**

---

[90]*United States v. Riggins*, No. 07-40055, 2008 WL 558087, at * 2 (D.S.D. Feb. 29, 2008) (citing *United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993)).

[91]*Ivy*, 83 F.3d at 1282 (rejecting defendants' contention that the government was required to identify the parts of the discovery that would clarify the indictment when the government provided full discovery).

The Indictment charges Defendants Miller, Earnshaw, Rouse and Moser with conspiracy to commit bank fraud and money laundering, as well as the substantive crimes of bank fraud and money laundering.  Other defendants named in the Indictment, Steve Middleton, Lanny Ross and Judy Brumble have now pled guilty.[92]  The Indictment contains 59 counts and a Forfeiture Notice and Allegation.  In a four page "Introduction," the Indictment describes the business operations of Defendant Miller, and identifies each defendant's role in, or association with, Miller and/or Miller's business operations.

The Introduction sets forth that Miller owned and operated Enterprises and Star Land Development, businesses through which he built and developed houses.  Miller also "started, financed and controlled" Associated Capital and Associated Finance, businesses that prepared loan applications for buyers, and serviced second mortgages on the properties.

Defendant Earnshaw is identified as a loan officer for Maplewood Mortgage and Prosource Mortgage, as well as a real estate agent who sold many of the homes built by Miller.  The Introduction further alleges that after Miller became the subject of a host of lawsuits and investigations, he stopped doing business as Associated Capital and Associated Finance, and began selling homes through middlemen, including Earnshaw.  The Introduction also states that by virtue of a consent judgment, Miller was prohibited from employing Earnshaw as a real estate agent or mortgage broker; and that the consent judgment forever banned Earnshaw from engaging in the mortgage business in Kansas.

Defendant Rouse is identified as a loan officer for Maplewood Mortgage and Prosource

----

[92]Angela Parenza and Elizabeth Hessel pled guilty to the original Indictment in this case, prior to the filing of the First Superseding Indictment.  Paul Nicolace has been dismissed from this case upon motion of the government.

Mortgage, as well as a sales representative for BNC Mortgage.  Defendant Moser is identified as a real estate investor; the Introduction goes on to describe how beginning in 2002, Miller began marketing his houses to investors at a discount if they purchased the houses in volume, but this discounting was not disclosed to the lenders.

The Introduction also identifies the other co-defendants in this case; Judy Brumble is a loan officer and processor and an "ostensible real estate agent for Miller, as well as a middleman through whom Miller sold houses with a kick-back of her real estate commissions paid to Miller; Steve Middleton is a middleman through whom Miller sold houses; and Lanny Ross is a real estate appraiser who provided inflated appraisals to Miller.[93]

Count 1 of the Indictment charges all defendants with conspiring with each other and others, to defraud financial institutions and commit money laundering.  Count 1 states that the "object of said conspiracy and scheme to defraud was to enrich the conspirators by manipulating home buyers, manipulating appraisals and submitting materially false and fraudulent loan applications to obtain loan proceeds from federally insured financial institutions."

In nine narrative paragraphs, certain overt acts of the conspiracy are detailed.  Defendants Miller, Earnshaw, and Moser are specifically mentioned in the overt acts section.  Miller is alleged to have committed a number of the described overt acts.  Moser is alleged to be one of the investors who acted as a straw buyer, who was paid kickbacks out of the loan closings and who planned to let the properties go into foreclosure.

Earnshaw and Miller are alleged to have created a form called the Principal Reduction

---

[93]The original Indictment identified and described the involvement of other alleged conspirators.  Angela Parenza and Elizabeth Hessel served as loan officers for Associated Capital.  Parenza was also Miller's office manager and among her many acts were forging potential buyer's signatures on loan documents.

Form to reduce the second mortgage, "which was provided to the home buyer after closing.  At various times the defendants would fail to disclose the fact of second and/or third mortgages, and/or the fact that there was a discount to the buyer on the second or third mortgages."

In their entirety, these nine paragraphs of overt acts paint a picture of the conspiracy and scheme to defraud financial institutions and launder money.  In short, the Indictment explains that Miller owns a company in the business of manufacturing and selling homes, that he targeted buyers with credit problems, that he owned another business used in the financing of home loans, and that he hired the other defendants to serve certain roles in the scheme.  The Indictment alleges that Miller turned his business into a "One Stop Shop" for home buyers, where they could pick out a house and obtain financing without going any further.  To maintain the conspiracy, Miller and others "created and caused to be created, materially false loan applications and accompanying documents, such as tax returns, employment verifications, rental agreements, rental verifications, and payment histories, to cause federally financial institutions to fund loans . . . ."  The Indictment notes that Miller and others "obtained intentionally inflated appraisals by refusing to pay appraisers if his price was not met," and "manipulated home buyers into moving into Miller-built houses in advance of closing" then coercing buyers to accept an increased sales prices at closing.

In addition to these nine narrative paragraphs describing overt acts, Count 1 states that in furtherance and execution of the conspiracy, the defendants committed overt acts constituting the substantive offenses charged in Counts 2 through 59 of the Indictment.  Count 1 incorporates by reference, Counts 2 through 59 as overt acts of the conspiracy.

Defendants Miller, Earnshaw, Rouse, and Moser are charged in many of these

substantive counts.  Counts 2 through 54 all charge bank fraud, and present specific information concerning each count of bank fraud in a tabular format.  Notably, Counts 2 through 54 also charge the defendants with aiding and abetting the bank fraud, in violation of 18 U.S.C. §2.  For each count, the following information is provided in a table: (1) the "on or about date;" (2) the name of the financial institution and the name of the borrower; (3) the defendants involved; and (4) the amount of the loan disbursement."

- **Sufficiency of Notice**

After reviewing the Indictment, and based on statements of counsel regarding the volume and type of discovery received by defendants, the Court largely finds no merit in defendants' claims that they are not on sufficient notice to allow them to adequately prepare for trial and/or avoid double jeopardy.  The Introduction, Object of Conspiracy, and Overt Acts sections of the Indictment provide much more detail than is required in an indictment.  This information, coupled with the information in the substantive counts, as well as the content of the evidence defendants have discovered, provides answers to many of the defendants' questions about the illegal acts and actors underlying each count of the Indictment.

The defendants acknowledge that they are on notice of the allegations that there were inflated appraisals, fraudulent loan applications, concealed discounts and/or kickbacks, and false lease/purchase agreements.  They contend that they cannot ascertain from the Indictment, however, which of these allegations attaches to each count, nor what they are alleged to have done illegally with respect to a particular transaction.  For example, defendant Rouse complains that he cannot ascertain what he is alleged to have knowledge of, or whether he is alleged to have directly participated in inflated appraisals, false loan documents, providing down payments

25

or closing costs to buyers, or something else.  Rouse complains that the government's unwillingness to provide discovery of witness statements, including the statements of home buyers, unless they are discoverable through the Jencks Act, *Brady* or *Giglio*, impairs his ability to identify what he is alleged to have done wrong.  Although he can ascertain which transactions he participated in as a loan officer, that does not give him notice of what he did that was unlawful, for the act of being a loan officer, alone, is not criminal.  Rouse claims that he cannot ascertain whether he is alleged to have falsified documents; and that the fact that on some transactions he served as the representative of a lending company, rather than as a loan officer, further confuses the issue.

The other defendants similarly contend that they cannot ascertain what illegal act they committed with respect to the loan transactions for which they are charged.  Defendant Miller, for example, complains that in Count 2, he cannot ascertain whether he is alleged to have falsified the loan application, obtained an inflated appraisal, failed to disclose that a second mortgage was going to be discounted, or provided the borrower with his down payment and closing costs.

But the government offers that information from the discovery provided and the Indictment.  If the defendant can identify the loan transaction, the fraudulent conduct is self evident in each loan file, which the defendants have fully discovered.  At the hearing on these motions, the government represented that where there is an inflated appraisal by one of the defendants, that appraisal form is in the file, presumably on its face identifying the defendant as the appraiser.  And where there are fraudulent loan applications, the loan file may reveal who prepared certain documents, who communicated with the borrower, who filled out the loan

26

application or who submitted it to the financial institution.

Moreover, given the detail provided in the Indictment, a particular defendant's illegal conduct may be evident based on the types of documents in a particular loan file, or based on the type of transaction itself.  For example, the Indictment alleges that Earnshaw created a form called the Principal Reduction Form, used to reduce the balance of a second mortgage, a form that was provided to the home buyer after closing.  In essense,  Earnshaw is alleged to have committed fraud by participating in transactions in which the existence of a second mortgage was concealed from the primary lender, or the correct amount of the second mortgage was misrepresented.  Files containing this principal reduction form and documents memorializing a second mortgage identify the alleged criminal acts of Earnshaw on a particular transaction. Moreover, if a loan file reveals that Earnshaw was the real estate agent, that places Earnshaw on notice that he is also alleged to have sold the property to the home buyers, or to investors like Moser who actually purchased the homes at a discount, something Earnshaw, as the real estate agent would allegedly be aware of.  Or perhaps the loan file might reveal Earnshaw was the real estate agent who sold property to an individual buyer, who used Miller's one stop shop to obtain financing as well, and who may have been urged by Earnshaw to move into the property before closing.

To be sure, some of this detail may not be facially evident from the loan files, but to the extent Earnshaw and others are alleged to have committed acts that are not evident from the loan documents or other discovered evidence, the defendants have failed their burden of showing prejudicial effect.  Without the defendants providing some indication of what documents they have discovered and what those documents reveal in light of the Indictment's

27

detailed description of the scheme and conspiracy, the Court is unable to determine with much more specificity what, if anything, the defendants are entitled to have in a bill of particulars.

Nonetheless, the Court conditionally grants the motion for bill of particulars to this extent: the government is directed to provide the defendants with the act or acts they committed in violation of the substantive counts of the Indictment, or the act or acts they committed in aiding or abetting another, where the defendant's  participation in a particular loan transaction cannot be ascertained from the loan files, witness statements, or other discovered evidence.

The Court is mindful that the government need not particularize all of its evidence.[94] Thus, the defendants are only entitled to a bill of particulars in those situations where they have not discovered sufficient evidence in the loan file or in other evidence disclosed to date.   The Court's partial and conditional granting of the motion for bill of particulars does not require the government to detail all of its evidence, just sufficient evidence that the defendant knows what act they did in committing fraud, or aiding and abetting fraud.

Defendant Moser also contends that the Indictment is insufficient because it fails to provide notice of how the government arrived at the forfeiture amount in Count 60, of $25,042,670.39.  To the extent that this amount is not the total of the amounts of the loan disbursements in Counts 2 through 54 and the amounts of the monetary transactions in Counts 55 through 59, the government is directed to provide defendant with a bill of particulars itemizing the amounts comprising the $25 million figure in Count 60.

- **Miller's Motion to Dismiss**

---

[94]*United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994) (citing *United State v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991) (denying defendants' motion for bill of particulars as a subtle attempt to get the government to "'particularize all of its evidence'") (quotation omitted).

Miller's motion for a bill of particulars is in the alternative to his motion to dismiss Counts 2-54 for the government's failure to plead with the requisite specificity.  But as discussed above, this Indictment certainly satisfies the minimal standards required, and spells out the requisite elements of offense charged.  Moreover, as discussed above and further discussed below, the defendants are not entitled to a bill of particulars where the nature of their acts and participation is evident from the loan files and/or other evidence produced, when carefully considered in light of the detail provided in the Indictment.  Thus, Miller's motion to dismiss is denied.

Miller relies on *United States v. Daniels*,[95] a case in which the indictment was structured much like the one here, with the substantive counts presented in a tabular format that referenced the narrative information provided in the conspiracy count.  In *Daniels*, Judge Vratil found that the indictment was constitutionally sufficient, placing the defendant on notice of the charges and the "essential facts and general circumstances underlying them."[96]  This Indictment does the same.

There is a material distinction between this case and *Daniels*, however.  In *Daniels*, there was but one defendant; the defendant thus did not have to ascertain what he was alleged to have done *vis-à-vis* the other defendants.  In this case, the Indictment states what roles or functions each defendant performed; and the documents in the loan files may well evidence what the defendant did in a particular transaction.  Where, however, the discovered evidence and Indictment do not together inform as to what a defendant did to commit bank fraud or to aid and

---

[95] 159 F. Supp. 2d 1285 (D. Kan. 2001).

[96] *Id.* at 1295.

29

abet bank fraud, the government is directed to provide a bill of particulars as to what that particular defendant did to violate the statute in that particular count.

For example, if a defendant's alleged participation was that he urged the buyer to move in before the closing date, and there is nothing in the discovered evidence showing that the buyer moved in early or that the defendant had that discussion with the buyer, then the government is directed to provide a bill of particulars on that particular count.

- **Motion to Strike**

Miller moves to strike portions of paragraphs 5, 7, and 10 from the Indictment.  Federal Rule of Criminal Procedure 7(d) states that the Court may strike surplusage from an indictment. This means that a court, in its discretion, may strike allegations that are inflammatory and prejudicial to the defendant and not relevant to the charges in the indictment,[97] or "allegations which are both independent of and unnecessary to the offense on which a conviction ultimately rests."[98]

The motion is denied.  Miller argues that paragraph 5 should be deleted because it is inflammatory and gives the impression that Miller has been under investigation for prior conduct not charged in this Indictment.  Paragraph 5 states that as a consequence of Miller becoming the subject of lawsuits, legislative and state agency enforcement actions, and adverse publicity, which the Indictment details, Miller changed the way he did business and thus the way the conspiracy operated.  While evidence that external pressures caused Miller to change the

---

[97]*United States v. Schuler*, 458 F.3d 1148, 1153 (10th Cir. 2006) (quoting *United States v. Collins*, 920 F.2d 619, 631 (10th Cir. 1990)).

[98]*United States v. Brooks*, 438 F.3d 1231, 1237 (10th Cir. 2006) (citing *United States v. Miller*, 471 U.S. 130, 136-37 (1985)).

structure or methods of the conspiracy is admissible evidence intrinsic to the conspiracy, detailing what these external pressures were may or may not be probative, and may be prejudicial.  Without deciding the admissibility of such evidence, the Court will deny the motion to strike the language in paragraph 5 of the Indictment, reserving for later decision whether paragraph 5 should be read to the jury, or whether the evidence referenced in paragraph 5 will be admissible at trial.

Miller similarly complains about Paragraph 7, which states that Miller received adverse publicity and reputation from the "intentionally poor quality of his construction."  This seems probative, for paragraph 7 goes on to state that as a consequence Miller could no longer sell many houses to individuals, so instead sold his houses to investors in a manner that defrauded financial institutions in a different way.  Thus, the Court will deny the motion to strike paragraph 7, but again reserves ruling on the admissibility of such evidence, and whether this portion of the Indictment will be read to the jury.

Finally, Miller argues that portions of paragraph 10 only serve to inflame the jury.  That paragraph states that Miller sought home buyers who were less sophisticated and those with credit and financial problems.  Miller argues that this statement does not relate to any charge in the Indictment and only serves to create prejudice.  This statement, however, appears to describe conduct that was intrinsic  to the conspiracy, in that the conspiracy allegedly involved the defendants providing down payments to some buyers as well as second mortgages that were concealed from the primary lenders, as well as coercing buyers to move into the homes before closing.  The motion to strike this language is denied.

## VI.    Limine Motions

Miller moves to exclude several types of evidence.[99]  Typically the Court does not decide limine motions this far in advance of trial; and the Court intends to schedule a limine hearing closer in time to the trial.   Nonetheless, the Court will consider these motions now, as both Miller and the government have briefed the issues.

- **Evidence of Prior Investigations and Settlements**

Miller moves to exclude evidence of prior civil investigations and settlements, as inadmissible evidence pursuant to Fed. R. Evid. 408.  The Indictment states that Miller became the subject of actions by state enforcement agencies, including the offices of the Attorneys General for the states of Kansas and Missouri and the Office of the Kansas State Bank Commissioner.  Pursuant to Rule 408(a)(2), evidence of conduct or statements made in compromise negotiations is admissible in a criminal case, if the negotiations relate to a claim by a public office or agency in the exercise of its regulatory, investigative or enforcement authority.  Thus, evidence of compromise negotiations concerning the investigations or enforcement actions by these state agencies would be admissible.  Rule 408(b) further provides that evidence of conduct or statements made in compromise of such state agency actions is admissible if it is offered for purposes such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.  The government contends that evidence of prior investigations and enforcement actions is relevant to explain why defendant Miller altered the conspiracy and scheme to defraud financial institutions. The government explains,

> [a]s pressure mounted from organized home buyers who were

---

[99](Docs. 246, 247, 250)

> forced to resort to media coverage, regulatory intervention, then
> finally civil law suits, defendant Miller changed the name of his
> business, enlisted Judy Brumble to conceal his prohibited
> relationship with defendant Earnshaw, then ultimately relied upon
> investors such as defendant Moser so that the Miller name would
> not be associated with Miller built homes.

The Court denies this motion without prejudice.  The motion may be renewed and considered during the limine hearing, and the Court can then consider the relevancy of this evidence, as well as whether its probative value outweighs any prejudicial effect.

- **Evidence of Negligent Workmanship**

Defendant Miller moves to exclude evidence of negligent workmanship.  This objection appears to relate to the same type of evidence addressed in the motion to exclude evidence of prior investigations and settlements.  Again, the government argues that this evidence is probative, as it too explains why Miller altered the conspiracy, in light of complaints, investigations and enforcement action.  The government also argues that this evidence is relevant to show intent, in that "Miller's only concern was to get loan applications approved, and buyers into homes.  In order to accomplish this and move the huge volume of homes in his inventory, defendant Miller sacrificed quality."  This motion is denied without prejudice; and can be renewed and argued at the limine hearing.

- **Evidence of Wealth**

Miller moves to exclude evidence of wealth as not probative, but prejudicial.  The government argues that evidence of a defendant's financial stake in a conspiracy is a factor the jury may consider in determining whether a conspiracy existed and whether a defendant was a member of it.  Indeed, that is a factor included in a standard jury instruction on conspiracy.  The Court thus denies this motion without prejudice, and assuming the motion is renewed, the Court

will determine the relevancy of this evidence at the limine hearing, as well as weigh its probative value against any prejudicial effect.

**IT IS THEREFORE ORDERED THAT:**

(1) Defendant Earnshaw's motion for disclosure of 404(b) evidence (Doc. 241) is denied;

(2) Defendants' various motions for discovery of exculpatory and impeachment evidence  (Docs. 235, 248, 254) are granted in part and denied in part;

(3) Defendant Moser's motion for discovery of abbreviated witness list (Doc. 261) is denied;

(4) Defendant Moser's motion for early inspection of demonstrative evidence (Doc. 263) is granted in part and denied in part;

(5) Defendant Earnshaw's motion for identification and summary of testimony of expert witnesses (Doc. 234) is denied;

(6) Defendant Moser's motion for notice of Rule 807 Evidence (Doc. 266) is denied;

(7) Defendants' various motions for additional time to file motions (Docs. 243, 252 and 259) are granted in part, giving them an additional 30 days from the date of this order;

(8) Defendants' various motions for notice of non-testifying co-conspirators's statements, for a *James* hearing and for determination of admissibility (Docs. 228, 239, 249, 265) are granted in part and denied in part;

(9) Defendant Earnshaw's motion for exclusion of co-conspirator testimonial statements (Doc. 229) is denied without prejudice;

(10) Defendant Ross's motion to suppress (Doc. 256) is denied;

(11) Defendant Moser's motion for severance (Doc. 258) remains under advisement, and Defendant Moser is directed to submit *ex parte*, within 10 days of this order, a written statement

showing good cause why he is entitled to severance and/or why he is entitled to an *ex parte* hearing on his motion for severance;

(12) Defendant Earnshaw's Motion for Adequate Court Facilities (Doc. 237) is denied;

(13) Defendants' motions for bill of particulars (Docs. 231, 255, 273) are granted in part and denied in part;

(14) Defendant Miller's motion to dismiss (Doc. 244) is denied;

(15) Defendant Miller's alternative motion for bill of particulars (Doc. 244) is granted in part and denied in part;

(16) Defendant Miller's Motion to Strike (Doc. 245) is denied; and

(17) Defendant Miller's motions to exclude evidence of settlements, investigations, negligent workmanship and wealth (Docs. 246, 247, 250) are denied without prejudice.

**IT IS SO ORDERED**.

Dated this  3rd  day of July 2008.


 S/ Julie A. Robinson
Julie A. Robinson
United States District Judge