lml

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 06-40068-JAR |
| | ) | |
| F. JEFFREY MILLER, TODD EARNSHAW, | ) | |
| BRIAN ROUSE and JAMES MOSER, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the following pretrial motions: defendant F. Jeffrey Miller's Motion to Dismiss Count 1 as Multiplicitous of Count 1 in Case No. 06-40151 (Doc. 320), as supplemented (Docs. 370, 390); defendant Miller's Motion for *James* hearing (Doc. 370); defendant Miller's Motion to Strike or Otherwise Limit What is Read to the Jury (Doc. 370); defendant Miller's Renewed Motion for Intradistrict Transfer (Doc. 369); defendant James Moser's Motion for Additional Peremptory Challenges and to Allow Peremptory Challenges Separately (Doc. 359); and defendant Moser's Motion to Submit Jury Questionnaire (Doc. 360). Defendant Todd Earnshaw moves to join both of Moser's motions (Docs. 363, 364). A hearing was held October 20, 2009. The Court granted defendants Earnshaw's, Brian Rouse's and Moser's oral motion to join the motion for intradistrict transfer, granted Earnshaw's motion to join Moser's motions, and granted Moser's motions. The Court granted defendant Miller's request to supplement his motion to dismiss, and took the matters under advisement. After considering the arguments and submissions of counsel, the Court is prepared to rule.

## I.     Motion to Dismiss Count 1 as Multiplicitous

Defendant Miller first raised the multiplicity argument in Case No. 06-40151 ("*Miller*

*II*"), where during trial, he moved to dismiss the conspiracy count as multiplicitous of the

conspiracy charge in this case ("*Miller I*").[1]  Miller contended that he was charged twice for what

is essentially a single alleged conspiracy to commit the same conduct.  The Court denied Miller's

motion on the basis that multiplicity does not apply to charges in separate indictments.[2]  Instead,

"[m]ultiplicity refers to multiple counts of an indictment which cover the same criminal

behavior."[3]  Multiplicitous counts are considered "improper because they allow multiple

punishments for a single criminal offense."[4]  By contrast, Miller argues that his participation in a

single conspiracy has been improperly divided into separate charges and successive

prosecutions.  In denying Miller's motion, the Court held that, to the extent he alleges that he has

been convicted in *Miller II* of the same conspiracy that is charged in *Miller I*, he should seek

relief in the *Miller I* case, citing *Blockburger v. United States*.[5]  Miller has raised the issue in this

case, arguing that the Double Jeopardy Clause prohibits prosecution of a single conspiracy in

two separate cases.

The Double Jeopardy Clause protects against "'successive punishments and [ ]

---

[1]*Miller II*, Doc. 253.

[2]*Id*., Doc. 421.  *See United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006) ("Where there has been no prior conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long as no more than one punishment is eventually imposed.").

[3]*United States v. McCullough*, 457 F.3d 1150, 1162 (10th Cir. 2006) (quoting *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir. 1997)).

[4]*Id*. (quoting *United States v. Jenkins*, 313 F.3d 549, 557 (10th Cir. 2002)).

[5]284 U.S. 299, 304 (1932).

successive prosecutions for the same criminal offense.'"[6] As a threshold matter, the Court

addresses the government's arguments that defendant's double jeopardy claim is not ripe and,

even if it were, can be addressed by application of the "concurrent sentence doctrine." Notably,

the government did not raise these arguments until after the hearing, in its response to Miller's

supplemental briefing.[7]

The first question in a double jeopardy analysis is whether jeopardy has attached. There

is no question jeopardy attached in *Miller II*, as the jury was empaneled and sworn to determine

the case.[8] The second question is "whether jeopardy terminated in a way that prevents re-

indictment and re-prosecution."[9] "[T]he protection of the Double Jeopardy Clause by its terms

applies only if there has been some event, such as an acquittal, which terminates the original

jeopardy."[10] The government argues that jeopardy has not terminated because there is no final

judgment in *Miller II*, since defendant has not yet been sentenced and may appeal his conviction.

Miller, who is already in custody, will be sentenced on January 11, 2010, prior to trial in this

case, resulting in a final judgment of conviction that constitutes a terminating event.[11] While

---

[6]*United States v. Mintz*, 16 F.3d 1101, 1104 (10th Cir. 1994) (quoting *United States v. Dixon*, 509 U.S. 688, 696 (1993)).

[7](Doc. 395.)

[8]*See Yeager v. United States*, 129 S. Ct. 2360 (2009) (citation omitted); *United States v. Miles*, 327 F. App'x 797, 2009 WL 1631813, at *4 (10th Cir. June 11, 2009).

[9]*Miles*, 2009 WL 1631813, at *4 (citing *Illinois v. Sommerville*, 410 U.S. 458, 467 (1973) ("[T]he conclusion that jeopardy has attached begins, rather that ends, the inquiry as to whether the Double Jeopardy Clause bars retrial.")

[10]*Id*. (quoting *Richardson v. United States*, 468 U.S. 317, 325 (1984)).

[11]*See Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (citing *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (explaining the Double Jeopardy Clause offers three protections: against a second prosecution for the same offense after acquittal; for a second prosecution for the same offense after a conviction; and against multiple punishments for the same offense)).

reversal and remand of the conspiracy count on grounds other than sufficiency of the evidence

would not preclude retrial of that count on double jeopardy grounds,[12] the government has not

cited any authority that appeal status of a conviction somehow delays that terminating event.

Nor can any double jeopardy issue be addressed by relying on the "concurrent sentence

doctrine."  The government argues that under that doctrine, the Court could decline to address

any double jeopardy issue by imposing a sentence concurrent to *Miller II* if there is a guilty

verdict on the *Miller I* conspiracy charge.  As authority for its position, the government cites to

*Williams v. Maggio*,[13] a habeas corpus case that states:

> The concurrent sentence doctrine provides that if a prisoner is
> serving two or more concurrent sentences, and a reviewing court
> determines that one of the sentences is valid, the court may decline
> to review or consider the remaining sentence(s).  The doctrine is
> based on judicial convenience and economy.[14]

The Court finds nothing within the context of this doctrine that extends to the present

circumstance, where the government seeks to prosecute two allegedly separate conspiracies in

separate indictments.  The government has not cited, nor could the Court find, any authority that

a district court may proactively extinguish a defendant's double jeopardy claim by ruling that

any present harm could be addressed by employing the concurrent sentence doctrine.  By

contrast, where multiplicitous convictions are found, "the only remedy . . . is . . . to vacate one of

the underlying convictions as well as the . . . sentence based upon it . . . ."[15]  The Court sees no

---

[12]*See United States v. Lake*, 472 F.3d 1247, 1260 (10th Cir. 2007) (citing *Burks v. United States*, 437 U.S. 1, 18 (1978)).

[13]714 F.2d 544 (5th Cir. 1983).

[14]*Id*. at 557 (internal quotations omitted).

[15]*Id*. (quoting *Rutledge v. United States*, 517 U.S. 292, 301-02 (1996) (internal quotation marks omitted)).

reason why the remedy for successive prosecutions should be handled any differently.

The Court turns to the merits of Miller's double jeopardy argument. "[I]f two charges of conspiracy are in fact based on a defendant's participation in a single conspiracy, the former jeopardy clause bars the second prosecution."[16] Defendant has the burden of proving double jeopardy applies and "must prove 'in fact and in law' that only one conspiracy existed in order to prevail on [his] double jeopardy claim"[17] Miller urges the Court to apply a totality of the circumstances test to his claim of double jeopardy.[18] The Tenth Circuit, however, continues to follow the "same evidence" test set forth in *Blockburger v. United States*,[19] to determine whether two conspiracy prosecutions violate the double jeopardy clause.[20] The *Blockburger* "same evidence" test provides that offenses charged are identical in law and fact only if the facts alleged in one would sustain a conviction offered in support of the other."[21] "In a double jeopardy analysis involving conspiracies, the court must determine whether the two transactions were interdependent and whether the Defendants were united in a common unlawful goal or purpose."[22] "[I]nterdependence involves a determination of whether the activities of [the]

---

[16]*United States v. Daniels*, 857 F.2d 1392, 1393 (10th Cir. 1988).

[17]*United States v.Mintz*, 16 F.3d 1101, 1104 (10th Cir. 1994) (quoting *Daniels*, 857 F.2d at 1394).

[18]*See*, *e,g,*, *United States v. Rigas*, —F.3d—, 2009 WL 3365914 (3d Cir. 2009); *United States v. Castro*, 629 F.2d 456 (7th Cir. 1980). Although the government initially analyzes the double jeopardy issue under the Tenth Circuit standards, it later resorts to a totality of the circumstances analysis in its response to defendant's supplemental brief (Doc. 395), citing *United States v. Gomez-Pabon*, 911 F.2d 847, 860 (1st Cir. 1990).

[19]284 U.S. 299, (1932).

[20]*United States v. Cardenas*, 105 F. App'x 985, 2004 WL 1719468 (10th Cir. Aug. 2, 2004) (citing *Mintz*, 16 F.3d at 1104); *United States v. Sasser*, 974 F.2d 1544, 1549 n.4 (10th Cir. 1992).

[21]*Mintz*, 16 F.3d at 1104 (internal quotation omitted).

[22]*Id*.

alleged co-conspirators in one aspect of the charged scheme were necessary or advantageous to

the success of the activities of co-conspirators in another aspect of the charged scheme, or the

success of the venture as a whole."[23]  "[T]he focal point of the [interdependence] analysis is

whether the alleged co-conspirators were united in a common goal or purpose."[24]  "This common

goal, however, is not enough by itself to establish interdependence: 'What is required is a

*shared*, single criminal objective, not just similar or parallel objectives between similarly

situated people.'"[25]

Although the *Miller I* and the *Miller II* conspiracies had the same general objective—to

fraudulently obtain mortgage loan proceeds from financial institutions—it does not necessarily

follow that the separate co-conspirators were interdependent.  After reviewing the indictments

and the transcripts from the *Miller II* trial, the Court cannot conclude at this time that the earlier

conspiracy involving the *Miller I* defendants can be construed as the same offense for double

jeopardy purposes.  The Indictment in the *Miller I* conspiracy alleges that defendant Miller

created a "one-stop-shop" to market and sell his homes to buyers with credit problems.  In June

1998, Miller created Associated Capital to process the loan applications, and Associated Finance

to service his second mortgages on these homes.  After legal action by state enforcement

agencies, Miller "adapted and reconfigured" the conspiracy, and in 2001 began selling homes

through Classic Realty, a straw company operated by co-defendant Judy Brumble, in order to

circumvent certain Consent Judgments.  Then, in 2002, Miller reconfigured the conspiracy again

---

[23]*United States v. Rodriguez-Moreno*, 215 F.3d 1338 (Table), 2000 WL 504858 at *3 (10th Cir. Apr. 28, 2000) (quoting *Sasser*, 974 F.2d at 1550 (internal quotation omitted)).

[24]*United States v. Carnagie*, 533 F.3d 1231, 1239 (10th Cir. 2008) (quotation omitted).

[25]*Id*. (emphasis in original) (quoting *United States v. Evans*, 970 F.2d 663, 671 (10th Cir. 1992)).

to remove himself from direct contact with home buyers by marketing his homes to investors at a "discount," including investor co-defendant Moser. During the life span of the alleged *Miller I* conspiracy, Miller acted together with Earnshaw (1998 to 2000), Earnshaw and Rouse (2000 to 2001), and Earnshaw, Rouse and Moser (2002 to 2004).

By contrast, the evidence in *Miller II* established that conspiracy began in September 2004 with the introduction of Stephen Vanatta. Miller began a conspiracy that targeted unqualified buyers, using co-defendants Vanatta, Hallie Irvin and James Sparks. Miller began subordinating his development lots to other builders, receiving payment in full when the home sold. The *Miller II* conspiracy spans from September 2004 to September 2006. Defendant has not directed the Court to any evidence that Earnshaw, Rouse or Moser were involved in the *Miller II* transactions. Significantly, the *Miller II* conspiracy continued *after* the *Miller I* Indictment was returned in May 2006, which suggests two distinct, independent conspiracies.

To support his double jeopardy allegation, Miller relies on the involvement of Steve Middleton and Angela Parenza, who are both named defendants in the *Miller I* conspiracy count and have entered guilty pleas in this case. Middleton and Parenza were key government witnesses in the *Miller II* trial. Parenza testified that she started working for Miller in 1998 and worked for him until May 2006. Middleton also worked with Miller for a significant period of time, building homes in conjunction with Miller's development business. The mere involvement of Parenza and Middleton with Miller during the time span of both conspiracies does not establish interdependence. Defendant has not shown that Parenza did anything to further or promote the success of the *Miller II* conspiracy; and defendant has not shown that Middleton's involvement in building homes and financing seller carrybacks establishes an interdependence

between the *Miller I* and *Miller II* conspiracies. Nor does the time overlap between the two

conspiracies establish interdependence—the transactions in *Miller I* that occurred in September

2004 involved investors, while the transactions in *Miller II* that occurred in September 2004

involved Vanatta marketing to unqualified home buyers at Miller's direction. Thus, the Court

concludes that defendant has not met his burden to prove in fact and in law that only one

conspiracy existed in order to prevail on his double jeopardy claim.

This is not to say that defendant cannot establish such proof—as the parties are aware,

the Court granted the defendants' limine motions in *Miller II*, and thus carefully supervised and

limited the testimony and exhibits in the *Miller II* trial to ensure that the jury did not hear

evidence about the *Miller I* conspiracy and pending case. The Court trusts that the evidence

offered at the *Miller I* trial will shed light on the scope and evolution of that conspiracy and the

roles of the alleged co-conspirators.

Evidence of interdependence between the *Miller I* and *Miller II* conspiracies might

include, for example, the *Miller II* conspirators' knowledge of the existence of the *Miller I*

conspiracy or vice versa. Evidence of interdependence might also include the *Miller II*

conspirators' use, reliance or dependence upon relationships, entities or structures created or

used by the *Miller I* conspiracy or vice versa. For example, in one conspiracy, relationships may

have been established or built with appraisers, builders, brokers, or lenders; and the other

conspiracy benefitted by being able to use, rely or depend on some or all of these same business

relationships. Other examples of interdependence might include financial interdependence–

were any of the developments and lots in *Miller I* and *Miller II* purchased or financed through

common loans or operating lines of credit? Were the income and expenses on the developments

and lots in *Miller I* and *Miller II* accounted for separately? Were the profits to defendant Miller, the lone common defendant in *Miller I* and *Miller II*, accounted for separately?  While none of these examples, and no other example would be dispositive of the issue, interdependence is a factual question that the Court must determine after hearing the evidence and considering the totality of the circumstances.  While the Court has heard the evidence in *Miller II*, the Court has heard no evidence in *Miller I*, and indeed, through its *in limine* rulings, precluded any such evidence from being heard in *Miller II*.  Thus, the Court denies defendant's motion without prejudice to renew at trial, if evidence of interdependence between the two alleged conspiracies comes to light.

## II.     Request for *James* Hearing

The Court previously denied defendant's motion for a *James* hearing without prejudice.[26] Defendant Miller renews his request and, consistent with the Court's order, will provide additional material to the Court closer in time to trial and the *in limine* conference.  The government continues to assert that a *James* hearing is unnecessary.  The Court defers ruling on defendant's motion until the *in limine* conference prior to trial.

## III.    Motion to Strike or Otherwise Limit What is Read to the Jury

The Court previously denied a defense motion to strike certain language from the Indictment, but reserved ruling on what would be read to the jury.[27]  Defendant Miller states that he will timely submit to the Court prior to trial a proposed summary of the First Superseding Indictment to be read to the jury that removes prejudicial surplusage and properly informs the

---

[26](Doc. 289.)

[27]*Id.*

jury of the charges. The government reasserts its previous objections to defendant's request. The Court defers ruling on this motion until the *in limine* conference prior to trial.

## IV.      Renewed Motion for Intradistrict Transfer

The Court previously denied without prejudice defendant Miller's request for an intradistrict transfer.[28] Miller renews his request that trial proceedings, currently set for January 11, 2009, in Topeka, be conducted in the Kansas City, Kansas Division. Defendants Earnshaw, Rouse and Moser orally joined in defendant's motion at the hearing.

Pursuant to Fed. R. Crim. P. 18, determination of the place for trial within a District should be made "with due regard for the convenience of the defendant and witnesses, and the prompt administration of justice." Defendant argues the following factors in support of transfer: (1) the remaining defendants are all from the Kansas City area; (2) two defense counsel are in the Kansas City area; (3) almost all witnesses are based in the Kansas City area, including the primary government agent on the case; (4) the events from which the government's allegations are based occurred in an around the Kansas City area; and (5) a third case brought against Miller, Case No. 09-440067-JWL, was filed in Topeka but reassigned to Kansas City, where it was subsequently dismissed. Defendant notes that the Court's convenience cannot control the decision, and suggests that any inconvenience created originates from the government's unexplained decision to bring a case based out of Kansas City and involving Kansas City defendants in the Topeka Division.

The government adopts its previous response in opposition,[29] and argues that since the

_____

[28](Doc. 100.)

[29](Doc. 103.)

Court's November 21, 2006 Order, the Topeka Division has added a second electronic

courtroom and has renovated the original, making it large enough to accommodate trial of the

four remaining defendants.  As presentation of the substantial amount of evidence will mostly be

electronic, this factor now weighs in favor of trial in Topeka.  In addition, two of the remaining

defendants' counsel are located in Topeka, which is only sixty minutes from Kansas City.

Fed. R. Crim. P. 18 provides

> Unless a statute or these rules permit otherwise, the government must
> prosecute an offense in a district where the offense was committed.
> The court must set the place of trial within the district with due
> regard for the convenience of the defendant and the witnesses, and
> the prompt administration of justice.

"The trial court may weigh the prejudice alleged by defendant against the concern of providing a

speedy trial."[30]  A district court has discretion in determining whether intradistrict transfer is

appropriate.[31]  Further, a court's decision regarding change of venue is entitled to deference.[32]

Additionally, in evaluating motions for intradistrict transfer, courts rely on the principles

found in Fed. R. Crim. P. 21.[33]  This Rule provides for transfers of criminal cases from one

district to another.  Because Kansas is comprised of one judicial district, Rule 21 is inapplicable

to this case, but the Court looks to that Rule and the case law interpreting that Rule for guidance.

The Supreme Court has listed the following factors that a court should consider when

---

[30]*United States v. Lawson*, 670 F.2d 923, 926 (10th Cir. 1982) (citing *United States v. Brown*, 535 F.2d 424, 429–30 (8th Cir. 1976); *United States v. Florence*, 456 F.2d 46, 50 (4th Cir. 1972)).

[31]*United States v. Afflerbach*, 754 F.2d 866, 869 (10th Cir. 1985).

[32]*United States v. Williams*, 897 F.2d 1034, 1036 (10th Cir. 1990) (quoting *United States v. Hunter*, 672 F.2d 815, 816 (10th Cir. 1982)).

[33]*United States v. Weidner*, No. 02-40140, 2003 WL 21183177, at *11 (D. Kan. May 16, 2003) (citing *United States v. Walker*, 890 F. Supp. 954, 958 n.5 (D. Kan. 1995)).

determining whether a case should be transferred under Rule 21: (1) location of corporate

defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4)

location of documents and records likely to be involved; (5) disruption of defendant's business

unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative

accessibility of place of trial; (9) docket condition of each district or division involved; and (10)

any other special elements which might affect the transfer.[34]

Following Rule 18, the Court, having given due regard for the convenience of

defendants, finds that defendants will not suffer prejudice should the venue remain in Topeka.

Therefore, exercising its discretion, the Court will not transfer this case to Kansas City for trial.

The Court acknowledges the many factors under the Rule 21 analysis that defendants argue point

in favor of transferring this case to Kansas City, such as the location of defendants, the location

witnesses, the location of events likely to be in issue, and the location of counsel and the expense

to the parties. On the other hand, there is no indication defendants' business will be disrupted by

trying the case in Topeka, which is relatively accessible from metropolitan Kansas City, and the

evidence, which originated in Kansas City, is now located in Topeka, as all discovery has been

disseminated. Further, as the only active judge in the Topeka division, transfer of this case for

trial in Kansas City, will undoubtedly have an adverse effect on the docket condition of the

Topeka division. The docket in the Kansas City division will also be adversely impacted; this

trial is expected to last approximately eight weeks, tying up one of the courtrooms utilized by the

three active judges in that division. Although it might be convenient for defendants if the trial

were transferred to Kansas City, they have failed to allege any specific prejudice resulting from

---

[34]*Platt v. Minn. Mining & Mfg. Co.*, 376 U.S. 240, 243–44 (1964).

trying the case in Topeka.[35]  Thus, the motion for intradistrict transfer is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant Miller's Motion to

Dismiss Count 1 as Multiplicitous of Count 1 in Case No. 06-40151 (Doc. 320) is DENIED

without prejudice; and defendant Miller's Renewed Motion for Intradistrict Transfer (Doc. 369)

is DENIED.

**IT IS FURTHER ORDERED** that defendant Moser's Motion for Additional

Peremptory Challenges and to Allow Peremptory Challenges Separately (Doc. 359) and Motion

to Submit Jury Questionnaire (Doc. 360) are GRANTED.   As the Court ruled at the hearing,

defendants will be permitted a total of sixteen peremptory challenges between them.  Counsel for

Moser was directed to submit a jury questionnaire on or before October 26, 2009; the juror pool

will fill out the questionnaires on January 6, 2010, and the completed questionnaires will be

scanned and provided to counsel for review prior to trial.

**IT IS FURTHER ORDERED THAT** the Court shall defer ruling on defendant Miller's

Motion for *James* hearing (Doc. 370) and Motion to Strike or Otherwise Limit What is Read to

the Jury (Doc. 370) until the *in limine* conference held prior to trial.

**IT IS SO ORDERED.**

**Dated:  December 11, 2009**

                         **S/ Julie A. Robinson**
                         **JULIE A. ROBINSON**
                         **UNITED STATES DISTRICT JUDGE**

---

[35]*Afflerbach*, 754 F.2d at 869 (citing *United States v. Lawson*, 670 F.2d 923, 926 (10th Cir. 1982)).